UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMPUTER ASSOCIATES INTERNATIONAL, INC.<br><br>Plaintiff,<br><br>v.<br><br>STONE & WEBSTER, INC., STONE & WEBSTER MASSACHUSETTS, INC., and THE SHAW GROUP, INC.,<br><br>Defendants. | Civil Action No. _____<br><br>Mg-Cohen<br>04 10697 MEL |

RECEIPT # _____
AMOUNT $ _____
SUMMONS ISSUED _____
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE 4-5-04

**COMPLAINT**

**INTRODUCTION**

1.  Plaintiff Computer Associates International, Inc. ("CA") brings this action against the defendants Stone & Webster, Inc. ("S&W"), Stone & Webster Massachusetts, Inc. ("S&WM,"), and The Shaw Group, Inc. ("Shaw") to enforce the parties' software license agreements. Shaw and its subsidiaries, S&W and S&WM, are corporations that have assumed the obligations and liabilities for license agreements with CA that were transferred to them during bankruptcy proceedings of Stone & Webster Engineering Corporation ("SWEC"). Under these license agreements, the defendants are obligated to pay annual maintenance fees for the software licensed pursuant to the license agreements. While CA has fulfilled all of its contractual obligations under the license agreements, S&W, S&WM and Shaw have failed to pay annual maintenance fees, totaling $79,324.53.

## THE PARTIES

2. Plaintiff CA is a corporation duly organized under the laws of the State of Delaware, with headquarters located in Islandia, New York.

3. Defendant S&W is a corporation duly organized under the laws of the State of Louisiana, with its principal offices located at 4171 Essen Lane, Baton Rouge, Louisiana 70809.

4. Defendant S&WM is a corporation duly organized under the laws of the Commonwealth of Massachusetts, with its principal offices located at 100 Technology Drive, Stoughton, Massachusetts 02072.

5. Defendant Shaw is a corporation duly organized under the laws of the State of Louisiana, with its principal offices located at 4171 Essen Lane, Baton Rouge, Louisiana 70809.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the action is between citizens of different states and the amount in controversy exceeds $75,000.

7. Pursuant to 28 U.S.C. § 1391(a) and (c), venue is appropriate in the United States District Court for the District of Massachusetts because the defendants are subject to personal jurisdiction in Massachusetts and because a substantial part of the events and omissions giving rise to the claims below took place in Massachusetts.

## THE FACTS

I. **License Agreements**

8. On or about October 30, 1990, Platinum Technology, Inc. ("Platinum") and SWEC executed a Master Product License Agreement (the "Platinum License"), incorporated by reference herein, pursuant to which SWEC obtained the right to use and possess certain

copyrighted and proprietary software from Platinum (the "Platinum Software"). In exchange for the right to use and possess the Platinum Software, SWEC agreed to pay certain license and maintenance fees. Upon information and belief, the Platinum License was executed by SWEC in Massachusetts.

9. On or about October 30, 1990, Platinum and SWEC entered into a "Product Schedule A," which was incorporated into the Platinum License. On or about December 31, 1991, Platinum and SWEC entered into a "Product Schedule B," which was incorporated into the Platinum License. On or about September 23, 1994, Platinum and SWEC entered into a "Product Schedule C" (together with Product Schedule A and Product Schedule B, hereinafter referred to as the "Platinum Product Schedules"), which was incorporated into the Platinum License. Pursuant to these Platinum Product Schedules, Platinum and SWEC agreed to the specific Platinum Software programs to be licensed by Platinum and the amount of license and maintenance fees to be paid by SWEC. Upon information and belief, all of the Platinum Product Schedules were executed by SWEC in Massachusetts.

10. The Platinum License provides that product maintenance fees shall be charged as follows: "[T]here is no charge during the twelve (12) months following the EFFECTIVE DATE OF LICENSE. Thereafter, (unless the LICENSEE has prepaid for extended term MAINTENANCE) sixty (60) days prior to the anniversary date of the License, LICENSOR shall bill LICENSEE the then current charge for the next twelve (12) months of MAINTENANCE. LICENSEE agrees to pay the Maintenance Charge on or before the anniversary date of the License."

11. On or about December 31, 1997, Sterling Software ("Sterling") and SWEC entered into a "Non-Exclusive Perpetual License Agreement" (the "Sterling

License," and together with the Platinum License, the "License Agreements"), pursuant to which SWEC obtained rights to use and possess certain Sterling copyrighted and proprietary software products. In exchange for these rights, SWEC agreed to pay certain license and maintenance fees to Sterling. The Sterling License also specifies the specific software to be licensed from Sterling and the license and maintenance fees to be paid by SWEC. Upon information and belief, the Sterling License was executed by SWEC in Massachusetts.

12. Following the Effective Date of the Platinum License, CA purchased all of the assets of Platinum, including the Platinum License, and succeeded to Platinum's rights under the Platinum License. Following the Effective Date of the Sterling License, CA purchased all of the assets of Sterling, including the Sterling License, and succeeded to Sterling's rights under the Sterling License.

## II. SWEC's Bankruptcy, Shaw's Purchase of SWEC's Assets, and Shaw's Assumption of the SWEC's License Agreements with CA.

13. On or about June 2, 2000 (the "Petition Date"), SWEC, and its affiliated corporate entities, filed voluntary petitions for bankruptcy in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

14. Following the Petition Date, on or about July 14, 2000, the Bankruptcy Court approved an Asset Purchase Agreement By and Among Stone & Webster, Inc., Certain Subsidiaries of Stone & Webster, Inc. and The Shaw Group, Inc. (the "Shaw Agreement"), pursuant to which SWEC agreed to sell substantially all of its assets to Shaw.

15. Pursuant to the Shaw Agreement, SWEC assigned, and Shaw assumed liability for, "all computer software, programs and similar systems owned or licensed by any seller for use at or in connection with the business."

16. At a Bankruptcy Court hearing concerning Shaw's assumption of liabilities, on or about October 3, 2002, counsel for Shaw admitted that Shaw had assumed liability for amounts due under the Platinum and Sterling Licenses.

### III. Shaw Creates S&W and S&WM to Conduct Operations in Massachusetts through the Newly Acquired SWEC Assets.

17. On or about July 5, 2000, under the auspices of Shaw's officers and managers and with the use of Shaw funding, S&W was organized as a corporation under the Laws of the State of Louisiana.

18. S&W is registered in the Commonwealth of Massachusetts as a foreign corporation.

19. S&W's President is either Tim Barfield or Richard F. Gill. Tim Barfield is the President and Chief Operating Officer of Shaw. Richard F. Gill is an Executive Vice President and Chairman of the Executive Committee of Shaw.

20. S&W's Vice President is Robert L. Belk, who is also an Executive Vice President and CFO of Shaw.

21. S&W's Secretary is Gary P. Graphia, who is also the Secretary and General Counsel of Shaw.

22. Upon information and belief, Shaw holds a controlling shareholder interest in S&W.

23. On or about August 30, 2000, under the auspices of Shaw's officers and managers and with the use of Shaw funding, S&WM was organized as a corporation under the Laws of the Commonwealth of Massachusetts.

24. S&WM's Treasurer is Robert L. Belk.

25. On information and belief, Shaw owns a controlling shareholder interest in S&WM.

26. Shaw offers a comprehensive range of engineering and design services, from conceptual design to a fully integrated operation through S&W and S&WM.

27. Upon information and belief, the copyrighted and proprietary software licensed pursuant to the Platinum License, the Platinum Product Schedules, and the Sterling License is located in the Commonwealth of Massachusetts and is currently in the possession or control of S&W or S&WM.

## III. Shaw, S&W, and S&WM's Failure to Pay Maintenance Fees Due

28. On or about June 18, 2003, CA filed a motion in the Bankruptcy Court to compel Shaw to pay certain unpaid maintenance fees then due and owing under the Platinum and Sterling Licenses in the total amount of $337,665. These overdue amounts included invoiced maintenance fees that had accrued both before and after the execution of the Shaw Agreement.

29. On or about September 26, 2003, Shaw and CA settled that dispute prior to a hearing by entering into a Stipulation and Settlement Agreement (the "Shaw Settlement Stipulation"). Pursuant to the Shaw Settlement Stipulation, Shaw agreed to pay CA $233,384.60, and CA agreed to release Shaw from any liability for any claims or causes of action arising from the license agreements on or before August 21, 2003. Shaw paid all amounts due to CA under the Shaw Settlement Stipulation.

30. Since August 21, 2003, seven additional annual maintenance fees under the Platinum and Sterling Licenses have accrued in the total amount of $79,324.53.

31. On or about December 5, 2003, counsel to CA provided copies of the seven maintenance fee invoices to counsel for Shaw and requested timely payment.

32. On or about February 11, 2004, counsel to CA made a written demand upon Shaw for payment of the seven overdue invoices for maintenance fees.

33. The seven invoices for overdue maintenance fees still remain unpaid.

## CLAIMS

### COUNT I
### (Breach of Contract)

34. CA hereby repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 33 of this Complaint, *supra*.

35. Pursuant to the Platinum License Agreement, the Platinum Product Schedules, and the Sterling License Agreement assumed by Shaw, and its subsidiaries S&W, and S&WM, these entities are obligated to pay annual maintenance fees.

36. Shaw, S&W, and S&WM breached their obligations under the Platinum License Agreement, the Platinum Product Schedules, and the Sterling License Agreement by failing to pay the maintenance fees currently past due and owing.

37. As a result of Shaw's, S&W's, and S&WM's breaches of the Platinum License Agreement, the Platinum Product Schedules, and the Sterling License Agreement, CA has suffered, and continues to suffer, monetary damages and harm in an amount of $79,324.53.

## PRAYERS FOR RELIEF

WHEREFORE, CA respectfully requests that this Court:

(a) enter judgment in favor of CA and against Shaw, S&W, and S&WM under each Count of the Complaint;

(b) award CA monetary damages in an amount to be determined plus interest and costs, under each Count of the Complaint;

(c) award CA its attorneys' fees, paralegals' fees, court costs, and litigation expenses; and

(d)    grant such other and further relief as the Court deems appropriate.

                              Respectfully submitted,

                              COMPUTER ASSOCIATES
                              INTERNATIONAL, INC.

                              By its attorneys:

                              */s/ R. M. Harper II*
                              Douglas R. Gooding (BBO No. 558976)
                              Richard M. Harper II  (BBO No. 634782)
                              CHOATE, HALL & STEWART
                              Exchange Place
                              53 State Street
                              Boston, Massachusetts 02109
                              Tel: (617) 248-5000